Tony Campus et al. *vs.* Edward B. McElligott et als.

Maltbie, C. J., Hinman, Banks, Avery and Brown, Js.

Argued May 14th—decided July 10th, 1936.

*Martin E. Gormley,* with whom was *Adrian W. Maher,* for the appellants (defendant executors of James W. Hodson).

*Yale Matzkin,* for the appellee (plaintiff).

*Francis P. Guilfoile* appeared for the defendants (McElligott *et al.*).

Brown, J.  In this action the following material facts appear in the court's finding, which is not attacked by this appeal.  The Hodson estate, of which

the defendants Hodson and Lawlor are executors, is the owner of an office building on Center Street, a much traveled highway in the business section of Waterbury. In the seven foot sidewalk abutting the front of this building, is a trap door affording access to the basement. This door when closed is approximately flush with the sidewalk and extends out into the walk from the door's inner edge close to the front of the building, fifty-four inches. It is approximately thirty-six inches in width and is in two sections, each eighteen inches wide, made of plank one and three-quarters inches thick and each section weighing thirty to thirty-five pounds. Each section opens upward, being attached on its outer edge by two hinges to an opposite side of the hatchway opening, these sides extending at right angles to the front of the building. There was no guard or warning in connection with the door. Ordinances of the city forbade the construction of such a doorway without permission from its authorities, and also leaving such a door open unless properly guarded. About a month before the plaintiff sustained his injuries, the defendant executors engaged the defendants McElligott to supply fuel oil for heating this building as needed, and in connection therewith authorized them to make inspections for the purpose of keeping the oil tanks filled. Pursuant to the arrangement the defendants McElligott instructed their employee Irvin to make regular inspections of the oil tanks in the building to determine the amount of oil on hand and to report whenever oil was needed, which they supplied. The defendant executors provided this trap-door for the use of the defendants McElligott in this connection, and the latter instructed Irvin to use it in entering and leaving the building when making the inspections required. On October 29th, 1934, at about half past two in the afternoon, the plaintiff Campus, in

the exercise of due care, was walking along the side-walk in front of the building approaching the trap door which was closed. Just as he reached it, the section further from him was pushed open from below by Irvin, who had been making an inspection of the oil tanks in the cellar pursuant to the instructions above recited, causing Campus to step into the opening so made, whereupon the door was let fall upon him, resulting in a comminuted fracture of both bones of his left leg just below the knee.

The court concluded that the defendant executors and the defendants McElligott were jointly liable to the plaintiff Campus and the plaintiff Connecticut Light and Power Company, intervening as his employer under the Workmen's Compensation Act, and rendered judgment accordingly. The defendant executors have appealed, assigning as errors this conclusion of the court, and the overruling of their claims that no negligence upon their part contributed to the plaintiff Campus' injuries, but that the sole proximate cause thereof was the negligence of the defendants McElligott, who were independent contractors and against whom only, judgment should have been rendered.

The vital question determinative of this appeal is whether it falls within one of the exceptions to the general rule excusing the contractee landowner from liability for the negligent conduct of the independent contractor in his performance of their contract. This court has referred to one such exception in a case involving an intrinsically dangerous act, in terms broad enough to apply to the situation here, in these words: "It is as sound a rule of law as of morals, that when, in the natural course of things, injurious consequences will arise to another from an act which I cause to be done, unless means are adopted by which such consequences may be prevented, I am bound, so far as lies

within my power, to see to the doing of that which is necessary to prevent mischief. Failure to do so would be culpable negligence upon my part. *Bower* v. *Peate,* L. R. 1 Queen's Bench Div. 321." *Norwalk Gaslight Co.* v. *Norwalk,* 63 Conn. 495, 528, 28 Atl. 32. The reason for this exception is thus stated in the English case cited (p. 326): "There is an obvious difference between committing work to a contractor to be executed from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless preventive measures are adopted." And applying this principle specifically to those cases affecting users of the highway, the well-recognized rule has been well stated: "Where the work contracted for necessarily constitutes an obstruction or defect in the street, of such a nature as to render it unsafe or dangerous for the purposes of public travel, unless properly guarded or protected, the employer (equally with the contractor), where the injury results directly from the acts which the contractor engaged to perform, is liable therefor to the injured party." 4 Dillon, Municipal Corporations (5th Ed.) § 1723; *Robbins* v. *Chicago City,* 71 U. S. (4 Wall.) 657, 678. Accordingly, an abutting owner who causes an obstruction or defect under such circumstances cannot, by letting the work to an independent contractor, escape liability if the latter fails to take the necessary precautions. 14 R. C. L. 96, § 33, and cases cited.

While some actual construction work in the highway undertaken by the contractor pursuant to his contract with the contractee abutter, is the typical basis upon which the rule above quoted as phrased by Judge Dillon has been predicated, a like conclusion based upon the same general principle has prevailed in a well-established line of cases arising from the closely

analogous situation of injury resulting from a coal hole or hatchway in the sidewalk serving the abutter's property, negligently left open by an independent contractor. The principle laid down in these cases is well summarized as follows: "A person who occupies premises, and maintains or controls, for his own convenience, an opening in the adjacent sidewalk, through which he contracts for the delivery of goods, is liable for injuries received by a pedestrian as a result of the negligence of the deliveryman in not properly guarding or in failing to properly close the aperture." Note, 11 A. L. R. 571, citing *Pickard* v. *Smith*, 10 C. B. N. S. 470, and other cases.

The appellant defendants contend, however, that the present case is distinguishable from this class of cases and does not fall within the principle just stated because here the trap door had not been left open for an appreciable time, but as alleged and proved, was "negligently and carelessly opened . . . causing the plaintiff to fall therein." In view of the fact that the street was one which was much traveled and that the door covered all but sixteen inches of the sidewalk, opening it without taking any precaution to warn passersby that this was to be done or investigating to see whether anyone was passing, was an intrinsically dangerous act. In the light of the principles upon which the defendant's liability rests in cases of this nature, as indicated by what we have already said, no reason appears for drawing the distinction contended for by these defendants, and they have been unable to cite any authority in support thereof. The cases of *Cole* v. *Durham*, 176 N. C. 289, 97 S. E. 33, 11 A. L. R. 560, and *Ray* v. *Jones & Adams Co.*, 92 Minn. 101, 99 N. W. 782, on the other hand, afford cogent support for the contrary conclusion. In this case, as in *Cole* v. *Durham*, raising the door involved work of an inher-

ently dangerous character, and doing so without warning to pedestrians constituted negligence. What the court said in that case (p. 300) may well be said of this one: "If the work to be done is dangerous only by reason of the absence of proper care in doing it, the doctrine as to an independent contractor may apply, but if it is dangerous in itself and will continue to be so, and probably cause injury unless reasonable care is taken to render it harmless to others who are themselves in the exercise of due care, it does not apply." For the reasons we have stated, the court did not err in holding that the appellant defendants were jointly liable with the defendants McElligott.

In view of our conclusion stated, it is not necessary to discuss what effect, if any, any violation by the defendant appellants of the city ordinances might have had upon the issue of their liability.

There is no error.

In this opinion the other judges concurred.